**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO:**

**AARON ALLEN,**
individually and on behalf of all
others similarly situated,                                        **CLASS ACTION**

      Plaintiff,                                                        **JURY TRIAL DEMANDED**

v.

**KWH MERCHANDISING INC.**
**and KIRILL BICHUTSKY**,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Aaron Allen brings this class action against Defendants KWH Merchandising Inc.,

and Kirill Bichutsky, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's

own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47

U.S.C. §§ 227, et seq. (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §

501.059.

2.      To promote its goods and services, Defendants engage in unsolicited text messaging

and continue to text message consumers after they have opted out of Defendants' solicitations.

3.      Through this action, Plaintiff seeks injunctive relief to halt Defendants' unlawful

conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the

1

daily life of Plaintiff and members of each proposed class (defined below).  Plaintiff also seeks statutory

damages on behalf of Plaintiff and members of each proposed class, and any other available legal or

equitable remedies.

## JURISDICTION AND VENUE

4.        This Court has federal question subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227,

*et seq*. ("TCPA") and supplemental jurisdiction over the FTSA claims.

5.        The Court has personal jurisdiction over Defendants and venue is proper in this District

because Defendants direct, market, and provide their business activities to this District, and because

Defendants' unauthorized marketing scheme was directed by Defendants to consumers in this District.

## PARTIES

6.        Plaintiff is a natural person, and a citizen and resident of Broward County, Florida.

7.        Defendant KWH is a foreign corporation whose principal office is located in California.

8.        Defendant Bichutsky is a natural person who, at all times relevant to this action, was a

resident of the State of California. Defendant Bichutsky is the CEO of Defendant KWH.

## FACTS

9.        Defendants caused multiple text messages to be transmitted to Plaintiff's cellular

telephone number ending in 6985 ("6985 Number") after Plaintiff requested for the messages to "Stop"

and depicted below:



3



10.     Plaintiff first asked Defendants to stop contacting Plaintiff on December 30, 2023 by replying with a "Stop" instruction and on June 25, 2024, but Defendants continued to send Plaintiff text messages on multiple occasions including on or about June 25, 2024, July 18, 2024, August 1, 2024, August 2, 2024 and August 5, 2024.

11.     As demonstrated by the above screenshots, the purpose of Defendants' text messages was to solicit the sale of Defendants' goods and services.

12.     As reflected above, Defendants immediately acknowledged Plaintiff's "Stop" requests. Accordingly, it was unreasonable for Defendants to continue texting Plaintiff.

13.     Plaintiff reasonably revoked any consent to receive text messages by sending "Stop" instructions. Indeed, sending a "Stop" message is the standard recommended by industry groups such as the Mobile Marketing Association.

14.     As demonstrated by the above screenshots, Defendants refuse to honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendants' text message solicitations by responding, but Defendants continued to text message Plaintiff.

15.     Defendants' refusal to honor Plaintiff's opt-out requests demonstrates that Defendants have not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendants. The precise details regarding its lack of requisite policies and procedures are solely within Defendants' knowledge and control.

16.     Defendants' refusal to honor Plaintiff's opt-out requests demonstrates that Defendants do not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendants' knowledge and control.

17.     Defendants' refusal to honor Plaintiff's opt-out requests demonstrates that Defendants do not maintain a standalone do-not-call list. The precise details regarding their lack of training are solely within Defendants' knowledge and control.

18.     Defendants did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages they sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request, and the request was never processed; it was ignored by Defendants and its employees and Defendants continued to send text message solicitations.

19.     Defendants sent at least two solicitations after Plaintiff's initial opt-out request.

20.      Defendant Bichutsky is the CEO of Defendant KWH and has sole discretion and control over Defendant's business and marketing activities, including the transmission of the text messages at issue.

21.      On information and belief, Defendant Bichutsky personally participated in and/or directed and authorized (1) setting up the text messaging campaign, (2) initiating the sending of the text messages, (3) managing the campaign, (4) overseeing the campaign's results, and (5) generally coordinating the campaign.

22.      Plaintiff is the regular user of the telephone number that received the above text messages.

23.      Plaintiff was in Florida when Plaintiff received the above text messages.

24.      Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line. Plaintiff has no land-line phone number, and the number is Plaintiff's only way to contact Plaintiff when Plaintiff is home.

25.      Plaintiff registered the 6985 Number on the National Do Not Call Registry on or about July 1, 2024.

26.      Upon information and belief, Defendants maintain and/or have access to outbound transmission reports for all text messages sent advertising/promoting their services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

27.      Defendants' failure to honor opt-out requests demonstrates that Defendants do not 1) maintain written policies and procedures regarding their text messaging marketing; (2) provide training to their personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

28.     Defendants' failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

29.     To send the text messages, Defendants utilized a messaging platform (the "Platform"), which permitted Defendants to transmit blasts of text messages automatically and without any human involvement. The Platform automatically sent text messages to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the texts were initiated utilizing the Platform. Defendants' use of a generic text message (depicted above) further demonstrates that Defendants utilize automated dialing systems to mass transmit solicitation texts to consumers.

30.     The Platform has the capacity to select and dial numbers automatically from a list of numbers.

31.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

32.     The Platform also has an auto-reply function that results in the automatic transmission of text messages, which was utilized by Defendants as reflected above.

33.     Defendants were not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendants opted to use the Platform to maximize the reach of their text message advertisements at a nominal cost to Defendants.

34.     Defendants would be able to conduct their business operations without sending automated text messages to consumers.

35.     Defendants would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

36.     Defendants would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

37.     Accordingly, it is not impossible for Defendants to comply with the FTSA in the context of transmitting text messages.

38.     The burden and cost to Defendants of securing consent from consumers that complies with the FTSA is nominal.

39.     Compliance with the FTSA will not result in Defendants having to cease their business operations.

40.     Compliance with the FTSA will not result in Defendants having the alter the prices of any goods or services they provide in the marketplace.

41.     Compliance with the FTSA will not force Defendants to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

42.     Plaintiff and the Class members revoked any consent they may have provided Defendants to text message them by responding with "stop" or similar opt-out instructions.

43.     Defendants sent the same or similar text messages to Plaintiff and each putative class member.

44.     Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. *See Drazen v. Pinto,* 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury").

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

45.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

Plaintiff and all others similarly situated.

46.     Plaintiff brings this case on behalf of the Classes defined as follows:

**INTERNAL DO NOT CALL CLASS: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message, (2) regarding Defendant KWH's goods and services, (3) to said person's residential telephone number, (4) after making a request to not receive future text messages by replying to the text messages by sending a text message(s) with a "Stop" or similar opt-out instruction.**

**FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, regarding Defendant KWH's goods and services, to said person's cellular telephone number, more than fifteen (15) days after communicating that they did not wish to receive text messages by replying to the text messages by sending a text message(s) with a "Stop" or similar opt-out instruction.**

**FTSA Autodialer Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, utilizing the Platform, regarding Defendant KWH's goods and services, to said person's cellular telephone number, more than fifteen (15) days after communicating that they did not wish to receive text messages by replying to the text messages by sending a text message(s) with a "Stop" or similar opt-out instruction.**

**DNC Class: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) were sent more than one text message call within any 12-month period; (2) where the person's cellular telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant KWH's property, goods, and/or services; (4) who did not purchase or transact business with Defendant KWH during the eighteen months immediately preceding the date of the first message; and (5) who did not contact Defendant KWH during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant KWH.**

47.     Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

48.     Defendants and its employees or agents are excluded from the Classes.

**NUMEROSITY**

49.     Given Defendants' use of an automated Platform to text message consumers, Plaintiff is informed and believes that there are at least 40 individuals that fall within each of the proposed classes, including at least 40 individuals throughout the United States that are members of the Internal Do Not Call Class, at least 40 individuals in Florida that are members of the FTSA "Stop" Class, and at least 40 individuals that are members of the FTSA Autodialer Class. The precise details regarding the total number of members of each class are solely within Defendant's possession as it sent or caused the text messages at issue to be sent, and only Defendant knows how many text messages were sent as it solely possesses the text message transmission logs. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50.     Identification of the Class Members is a matter capable of ministerial determination from Defendant's text message records.

**COMMON QUESTIONS OF LAW AND FACT**

51. There are numerous questions of law and fact common to members of each Class which predominate over any questions affecting only individual members of each Class.  Among the questions of law and fact common to the members of each Class are:

      a. Whether Defendants sent text message solicitations to Plaintiff and members of the Internal Do Not Call Class after they opted out of Defendant's communications;

      b. Whether Defendants sent text message solicitations to Plaintiff and members of the FTSA "Stop" Class after they opted out of Defendants' communications;

c.  Whether Defendants sent text message solicitations to Plaintiff and members of the FTSA Autodialer Class utilizing an automated system for the selection and dialing of telephone numbers;

d.  Whether Defendants maintain an internal do-not-call list and instructs its employees on how to use the list;

e.  Whether Plaintiff and members of the Internal Do Not Call Class revoked any consent they may have previously provided;

f.  Whether Plaintiff and members of the FTSA "Stop" Class revoked any consent they may have previously provided;

g.  Whether Plaintiff and members of the FTSA Autodialer Class revoked any consent they may have previously provided;

h.  The total number of text messages sent to Plaintiff and members of the Internal Do Not Call Class;

i.  The total number of text messages sent to Plaintiff and members of the FTSA "Stop" Class;

j.  The total number of text messages sent to Plaintiff and members of the FTSA Autodialer Class;

k.  Whether Defendants sent text messages to Plaintiff and members of each proposed class in order to solicit and market its services;

l.  Whether Defendants are liable for damages under the TCPA and/or FTSA, and the amount of such damages;

m.  Whether Defendants violated the TCPA by continuing to text message Plaintiff and members of the Internal Do Not Call Class after they opted out of Defendants' communications;

n.  Whether Defendants violated the TCPA by continuing to text message Plaintiff and members of the Internal Do Not Call Class without the requisite procedures required under section 64.1200(d);

o.  Whether Defendants violated the FTSA by continuing to text message Plaintiff and members of the FTSA "Stop" Class after they opted out of Defendants' communications;

p.  Whether Defendants violated the FTSA by text messaging Plaintiff and members of the FTSA Autodialer Class utilizing the Platform; and

11

      q.  Whether Defendants' conduct was knowing and willful such that the Court should award treble damages under the TCPA.

52.    The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

53.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Specifically, Plaintiff, like members of the Internal Do Not Call Class and FTSA "Stop" Class, opted out of Defendant's text messages, but continued to receive texts from Defendant. Additionally, Plaintiff, like members of the FTSA Autodialer Class, received text messages utilizing the Platform, and after having revoked consent. Plaintiff, like each member of the proposed classes, received the same or similar text message solicitations. Accordingly, Plaintiff's and each class's claim are very similar, if not identical: they arise from the same conduct, the legal bases are the same, and the facts are similar (if not identical).

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

54.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

55.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual

lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.   For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

57.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

58.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and

13

telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

59.     Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

60.     Plaintiff and the Internal Do Not Call Class members made requests to Defendants not to receive texts from Defendants.

61.     In violation of 47 C.F.R. § 64.1200(d), Defendants failed to honor Plaintiff and the Internal Do Not Call Class members opt-out requests.

62.     Defendants' refusal to honor opt-out requests demonstrates Defendants' failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

63.     Defendant Bichutsky personally participated and/or directed and authorized the sending of the text messages at issue.

64.     Defendants violated 47 C.F.R. § 64.1200(d).

65.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

66.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer

for Relief below.

## COUNT II
## VIOLATION OF FLA. STAT. § 501.059(5)
### (On Behalf of Plaintiff and the FTSA "STOP" Class)

67.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 56

as if fully set forth herein.

68.     In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound
> telephone call, text message, or voicemail transmission to a
> consumer, business, or donor or potential donor who has previously
> communicated to the telephone solicitor or other person that he or
> she does not wish to receive an outbound telephone call, text
> message, or voicemail transmission:
>
>     (a)   Made by or on behalf of the seller whose goods or services
> are being offered; or
>
>     (b)   Made on behalf of a charitable organization for which a
> charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

69.     "'Telephone solicitor' means a natural person, firm, organization, partnership,

association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes

or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated

dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

70.     Defendants are telephone solicitors as defined under the FTSA.

71.     Plaintiff and the Class Members are consumers who received one or more text messages

regarding Defendants' goods and services after they communicated to Defendants that they did not wish

to receive Defendants' text messages.

72.     Plaintiff and the Class members made requests to Defendants not to receive texts from Defendants.

73.     Defendants continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

74.     Defendants failed to honor Plaintiff and the Class Members' opt-out requests.

75.     Defendant Bichutsky personally participated and/or directed and authorized the sending of the messages at issue.

76.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

77.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

78.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

79.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

80.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or

16

may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit

for such purposes." Fla. Stat. § 501.059(1)(i).

81.     Plaintiff and the Class members revoked any consent they may have provided

Defendants by responding with a "stop" or similar opt-out instruction.

82.     In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales

calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members'

prior express written consent.

83.     Defendants made and/or knowingly allowed the telephonic sales texts to Plaintiff and

the Class members to be made utilizing an automated system for the selection and dialing of telephone

numbers.

84.     Defendant Bichutsky knowingly allowed the sending of the text messages at issue.

85.     Defendant Bichutsky personally participated and/or directed and authorized the

sending of the text messages at issue.

86.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA,

Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages

for each violation.

87.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer

for Relief below.

**COUNT IV**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

88.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 56

as if fully set forth herein.

17

89.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

90.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

91.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

92.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

93.     Defendant Bichutsky personally participated and/or directed and authorized the sending of the messages at issue.

94.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendants in violation of 47 C.F.R. § 64.1200.

95.     As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is

determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

96.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of each Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c)  An order declaring that Defendants' actions, as set out above, violate the FTSA and TCPA;

d)  Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 13, 2025

/s/ Manuel Hiraldo
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
305.336.7466

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
MEisenband@Eisenbandlaw.com
*Attorneys for Plaintiff*